# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 11-707V
(To be Published)
Filed: May 12, 2016

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
BONYE WOLF BARONE, as Conservator    *
of Person and Estate of JOAN NOVARRO, *
                                      *
            Petitioner,               *    Special Master Corcoran
                                      *
      v.                              *
                                      *    Damages Ruling after Hearing;
SECRETARY OF HEALTH AND               *    Attendant Care; Reasonably
HUMAN SERVICES,                       *    Necessary Medical Services.
                                      *
            Respondent.               *
                                      *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

*Rene Gentry*, George Washington University Law School Vaccine Injury Clinic, Washington, DC, for Petitioner.

*Lisa Watts*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## RULING REGARDING DISPUTED DAMAGES ITEM[1]

Joan Novarro[2] filed a petition on October 25, 2011, seeking compensation under the National Vaccine Injury Compensation Program (the "Program")[3] and alleging that she incurred Guillain-Barré syndrome ("GBS") after her receipt of the influenza ("flu") vaccine on October 31,

---

[1] Because this ruling contains a reasoned explanation for my action in this case, I will post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole ruling will be available to the public. *Id.*

[2] On February 18, 2014 (ECF No. 46), Petitioner moved to amend the caption to make Bonye Wolf Barone, Conservator of Person and Estate of Joan Novarro, the petitioner, and I granted the motion on April 17, 2014. ECF No. 49.

[3] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758 (codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012)) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act.

2008. Petition at 1 (ECF No. 1). After a motion for a ruling on the record, I issued an entitlement decision in Ms. Novarro's favor. *See* Ruling on Entitlement, dated Nov. 12, 2014 (ECF No. 58). The parties have since been attempting to calculate Ms. Novarro's damages award. This past winter, the parties reported to me that their respective life care planners had agreed on all damages items with one exception: the necessity of eight hours per week day of attendant care for Ms. Novarro in the skilled nursing facility to which she will be transferred after a damages award is made in this case. For the reasons stated below, I find that Petitioner has established the propriety of some, but not all, of the hours of attendant care requested.

**Procedural Background and Disputed Life Care Plan Component.**

After initiating this action, Ms. Novarro spent the period of time from the fall of 2011 into 2012 obtaining and filing medical records pertinent to her claim in this case. On August 8, 2012, Respondent filed her Rule 4(c) Report, asserting that Petitioner was not entitled to an award of compensation because she could not satisfy her burden of establishing causation-in-fact based upon the test set forth in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). ECF No. 27. Petitioner subsequently filed additional medical records, including evidence of her influenza vaccination (an omission Respondent had pointed out in her Rule 4(c) Report). Ex. 49 (ECF No. 32). After the Petitioner filed her expert report, Respondent asked for a ruling based on the existing record. *See* January 30, 2014, Supplemental Rule 4(c) Report and Request for Ruling on the Record (ECF No. 45). I issued my decision in Ms. Novarro's favor in November 2014.

Thereafter the parties attempted to calculate a damages award in this case. Both sides retained life care planners – Nancy Bond, M.Ed, CCM, CLCP, for Petitioner, and Laura Fox, MSN, BSN, RN, for Respondent – who worked closely together to prepare a single plan for Ms. Novarro acceptable to all. Although the process was time-consuming, by March 2016 the parties had reached agreement on virtually all aspects of the draft plan. *See* Updated Joint Life Care Plan, dated Mar. 3, 2016 ("JLCP"), attached as Ex. D to Respondent's Pre-hr'g Submissions (ECF No. 87).

The sole remaining disputed aspect of the life care plan is the necessity of a personal care attendant for Ms. Novarro. At the present time, Ms. Novarro's condition (she is wheelchair-dependent, suffers from quadriparesis[4], and is vision and cognition-impaired), and her personal family circumstances[5], require her to live in a skilled nursing facility. JLCP at 13. Although Ms.

---

[4] Quadriparesis, or tetraparesis, is muscular weakness that affects all four limbs. *Dorland's Illustrated Medical Dictionary* 1565, 1096 (32d ed. 2012).

[5] The parties are in agreement that home care for Ms. Novarro is impossible given her family situation. A letter filed prior to the damages hearing by Ms. Novarro's conservator (and nominal petitioner), Ms. Barone, states that the conservatorship was originally established because Ms. Novarro's daughter was mishandling funds required for her

Novarro has resided in Chesterfields Nursing Home in Chester, Connecticut since January 2012, the parties concur that a smaller facility in the same area, Essex Meadows in Essex, Connecticut, with excellent reviews from a nursing home comparison chart posted on the Government's "Medicare.gov" website[6] could better meet her needs, and that the cost of the new facility was comparable. *Id.* They have accordingly agreed to have Ms. Novarro moved to Essex Meadows once a damages award issues.

However, the parties disagree on the need for additional attendant services for Ms. Novarro beyond those provided by Essex Meadows. Ms. Bond believes that Ms. Novarro would greatly benefit from some individualized care, to provide her opportunities for personal services (such as showering) and one-on-one socialization that Essex Meadows cannot provide. *See* Letter, dated Oct. 29, 2015, from Nancy Bond, filed as Ex. 79 on Nov. 20, 2015 (ECF No. 81-3). Ms. Bond calculates the cost of such a personal care attendant (based upon an hourly rate of $22 and a schedule of eight hours of service per weekday (250 days per year)) as $44,000 a year. JLCP at 13. Petitioner also stresses that Ms. Novarro's mental condition is fragile, and that the ameliorative impact of an individual attendant to interact with her would assist her health in many respects. Ex. 79 at 2-4.

Respondent disputes the necessity of a personal care attendant. *See* Letter, dated Mar. 3, 2016, from Laura Fox, attached as Ex. F to Resp't's Pre-Hr'g Filing Statement, dated Mar. 4, 2016 (ECF No. 87). Ms. Fox instead believes that Essex Meadows will provide many of the benefits of the proposed personal care attendant without additional charge. Thus, at Essex Meadows (which Ms. Fox stresses is a highly-regarded skilled nursing care facility), Ms. Novarro will have the opportunity to live in a private room, and engage in many more social activities than at Chesterfields. Ex. F at 1-2. She also notes that Ms. Novarro was never deemed before to require personal attendant care (even though both sides agree that Chesterfields is a slightly inferior facility). *Id.* at 2.

The parties appeared before me on March 31, 2016, to argue their respective views on the proper resolution of the disputed care item.[7] At the hearing's conclusion, I urged the parties to

---

treatment. *See* Letter, dated Mar. 2, 2016, filed as Ex. 90 on Mar. 24, 2016 (ECF No. 91-3). Petitioner's letter also references "tensions and animus" within Ms. Novarro's family, and recommends against allowing Ms. Novarro's daughter to play a role in her care. Ex. 90. Ms. Bond for her part has noted that Ms. Novarro's family cannot provide any degree of home care for her in this case, and Ms. Fox did not dispute the assertion in any of her pre-hearing filings (or at hearing for that matter). *See* Cover Letter, dated Oct. 29, 2015, from Nancy Bond, filed as Ex. 79 on Nov. 20, 2015 (ECF No. 81-3) at 3-4.

[6] *See* Medicare.gov Nursing Home Compare, filed as Ex. 84 on Feb. 17, 2016 (ECF No. 85-2).

[7] Petitioner's case was presented at hearing by three students from the George Washington University Law School's Vaccine Injury Clinic – Smitha Uthaman, Stephnie John, and Megan Robertson. Each student comported herself in a professional manner, and provided able assistance to Petitioner.

attempt to settle their dispute, but they were unable to do so, thereby requiring my resolution of the matter.

## Damages Hearing

A.   Petitioner's Expert – Ms. Bond

Petitioner offered the testimony of her life care planner, Nancy Bond,[8] who presented Petitioner's case for 40 hours a week of attendant care. *See generally* Transcript of Mar. 31, 2016 hearing ("Tr.") at 11-55. Ms. Bond emphasized at the outset of her testimony that she had never before written a life care plan for an individual who would not be cared for at home, and that this was "troubling," but that after consulting with members of Ms. Novarro's family, she came to understand that "the family was not able to provide a safety net" and therefore Ms. Novarro would need to be cared for at a skilled nursing facility. Tr. at 14, 27-28, 43, 49.

Besides the familial limitations making home care of Ms. Novarro impossible, Ms. Bond also testified that (based on her onsite visits with Ms. Novarro at Chesterfields) residence at a skilled nursing facility was required for proper treatment and monitoring of Ms. Novarro's medical conditions. Tr. at 16-18. For example, due to Ms. Novarro's quadriparesis, two individuals were needed to transfer her from her bed to a wheelchair. *Id.* at 33-34. She thus emphasized that her overall opinion was that Ms. Novarro needed "around-the-clock" care (*Id.* at 15) – and that only a facility with the proper staff could provide it.

Despite the above, Ms. Bond concluded that additional attendant care beyond what would be provided at Essex Meadows was appropriate under the circumstances. Tr. at 18-20. In so doing, she noted that what a skilled nursing facility actually provided was "24-hour supervision" – staff available at all times, as opposed to serving the individuals residing at the facility on a constant basis. *Id.* at 39. By contrast, an additional personal attendant would be able to assist Ms. Novarro in maximizing her personal autonomy on a daily basis, by helping her to bathe and shower when she wished to (*id.* at 18), or dine (*id.*), or participate in activities at the facility (*id.* at 19). To a large extent, she felt that the attendant care requested would replicate certain elements of care otherwise available with home residence, but (due to Ms. Novarro's personal circumstances) that had to be abandoned in favor of the skilled nursing facility. *Id.* at 40 ("if I can't take her out of that

---

[8] Petitioner filed a copy of Ms. Bond's curriculum vitae in advance of the hearing. *See* Bond CV, filed as Ex. 88 on Mar. 7, 2016 (ECF No. 89-1). Respondent did the same for Ms. Fox. *See* Fox CV, filed as Ex. E on Mar. 4, 2016 (ECF No. 87-2). Both life care planners also briefly reviewed their credentials in their direct testimony. Tr. at 11-12, 56-57. In most entitlement cases, an expert's qualifications bear heavily on the weight to be given her testimony, and would therefore merit some mention in a decision. However, both Ms. Fox and Ms. Bond are qualified experts on life care issues with considerable Vaccine Program experience. Moreover, the issue I am called upon to resolve does not turn on whether I found their pronouncements credible in light of their actual experience, but rather upon my application of certain legal standards to the facts in this case (while taking into account their recommendations). I therefore omit a recitation of their respective qualifications in the interests of brevity.

institution, then I'm trying to at least bring some normalcy to her life so that she can have someone enrich and participate in her activities of daily living"). *Id.* at 49-50.

On cross-examination, Ms. Bond admitted that (although the parties agreed that moving Ms. Novarro from Chesterfields to Essex Meadows was appropriate) Ms. Barone had herself never suggested to Ms. Bond that additional one-on-one care of the kind being proposed herein was needed for Ms. Novarro. Tr. at 23-25.[9] She also acknowledged that the transfer to a new facility would inherently entail better care for Ms. Novarro – although she disputed Respondent's suggestions that such increased care was comparable to what she was recommending. *Id.* at 29-33, 35 ("no one in a nursing facility" receives the kind of individualized care that the proposed attendant would provide Ms. Novarro).

Ms. Bond also commented on the scope of attendant care requested, admitting that Ms. Novarro actually only needed three to four hours of additional care per day (beyond what Essex Meadows would be providing). Tr. at 37. She ultimately concluded that any amount of additional attendant care would be beneficial, noting that the eight-hour amount requested was produced mainly by calculating (after taking into account sleep time plus time that Essex Meadows staff would unquestionably be interacting with Ms. Novarro) what was left in the day. *Id.* at 52. She also noted that even if the requested care constituted an additional cost, home care would have entailed some additional costs as well (due to the need for special equipment or home modifications) that in this case were being avoided. *Id.* at 15.

    B.    <u>Respondent's Expert – Ms. Fox</u>

Respondent's life care planner, Laura Fox, provided an explanation for why she could not accept eight hours of attendant care per day for Ms. Novarro. She explained that after her site visit with Ms. Novarro at Chesterfields, she accepted Ms. Bond's recommendation that Ms. Novarro be moved to a better facility, noting that doing so would (among other things) make it easier for her to see certain of her family members, such as her daughter-in-law, with whom she remained on good terms. Tr. at 59-60. She acknowledged the change would constitute a treatment improvement, but noted her impression that Chesterfields had been "adequate" in meeting her care needs. *Id.* at 60-61.

Ms. Fox testified as to the differences between the care Ms. Novarro would receive at home versus in a skilled nursing facility like Essex Meadows. She accepted that it was not "realistic" for Ms. Novarro to be cared for at home given her family situation, and given the fact that she required 24-hour care of some sort (although Ms. Fox characterized it as monitoring by an available skilled

---

[9] Ms. Bond's testimony was equivocal as to whether any of Ms. Novarro's treaters favored additional attendant care. Thus, although she admitted that one treater, Dr. Juvan, had not directly proposed such care, the possibility of it was never posed to her, and Ms. Bond suggested that (given that Dr. Juvan is not a life care planner) it would not necessarily be a care option that would come to a physician's mind when pondering Ms. Novarro's "medical needs." Tr. at 54.

assistant rather than constant one-on-one attention). Tr. at 69, 82-83. Rather, "[i]n Ms. Novarro's case, the least restrictive environment happens to be a fairly restrictive environment." *Id.* at 70. She acknowledged that Essex Meadows would not provide constant one-on-one assistance to Ms. Novarro (even if it could provide 24-hour monitoring), but noted that this was never provided to individuals in such facilities. *Id.* at 75-76. The only occasion she could recall in her career in which she recommended, in the course of preparing a life care plan, that an individual receive constant attendant care involved an injured party who was completely paralyzed, required constant turning while in bed, and who dwelled in a larger institution than Chesterfields or Essex Meadows. *Id.* at 67-68. She nevertheless admitted that there were "significant benefits" to home care that, in this case, were lost, such as the ability to choose when to bathe (although she reiterated her overall opinion that the Essex Meadows facility agreed to by both life care planners was the best result under the circumstances). *Id.* at 88-89.

Ms. Fox did not dispute the overall contours of Ms. Novarro's care needs (and in particular her need for assistance with numerous day-to-day activities). Tr. at 62. But she expressed the view that any additional assistance Ms. Novarro required was only for medication administration or specific help with performing physical tasks. *Id.* at 64 ("Medication is the major skilled nursing need. The rest of her care is 'aid,' custodial care, turning, repositioning, being fed, diaper changing hygiene, bathing"). That kind of assistance, she opined, could be provided by existing services at Essex Meadows, and did not therefore require a one-on-one attendant. *Id.* at 65. Indeed, Ms. Fox felt that a skilled nursing facility like Essex Meadows provided "the highest level of care" available for a person in Ms. Novarro's circumstances. *Id.* at 67.

Given the above, Ms. Fox expressed disbelief that additional attendant care had been requested by the Petitioner. Tr. at 68. She felt that simply transferring Ms. Novarro to Essex Meadows would have an ameliorative effect on her care for only a small additional expense. *Id.* at 69. Eight hours per weekday of additional attendant care would simply duplicate most of what Essex Meadows would already be providing. *Id.* at 80-81.

## ANALYSIS

The parties dispute whether the requested personal attendant care for Ms. Novarro is a "reasonably necessary" component of her damages award. Section 15(a)(1)(A)(iii). As observed in other Program decisions, that phrase is unhelpfully imprecise. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *6 (Fed. Cl. Spec. Mstr. Apr. 19, 2013) (citing *Bedell v. Sec'y of Health & Human Servs.*, No. 90-765V, 1992 WL 266285, at *4 (Cl. Ct. Spec. Mstr. Sept. 18, 1992)). However, it was defined in an earlier Program decision to mean "that which is required to meet the basic needs of the injured person . . . but short of that which may be required to optimize the injured person's quality of life." *I.D.*, 2013 WL 2448125, at *6 (quoting *Scheinfeld*

*v. Sec'y of Health & Human Servs.*, No. 90-212V, 1991 WL 94360, at *2 (Cl. Ct. Spec. Mstr. May 20, 1991)).

To compound the problem, there is little case law helpful to determining what kind or level of attendant care is "reasonably necessary" under the present circumstances. *Lerwick v. Sec'y of Health & Human Servs.*, No. 06-847V, 2014 WL 3720309, at *5, n. 5 (Fed. Cl. Spec. Mstr. June 30, 2014) (attributing the dearth of authority as the result of cases settling), *mot. for review den'd*, 119 Fed. Cl. 745 (2015). However, there are a few cases in which attendant care has been proposed to supplement home care of an injured vaccinee. The Act explicitly allows petitioners to receive compensation for "residential and custodial care and service expenses . . . sufficient to enable the compensated person to remain living at home." Section 15(c). Although in this case the parties agree that home care is impossible, Petitioner's request for attendant care is aimed at supplementing what Ms. Bond suggests is lost by the need to place Ms. Novarro in a skilled nursing facility – and so cases in which home care is sought to be similarly supplemented might have some utility.

Assistance provided an injured party by her own family members is not compensable under the Vaccine Act. *McCollum v. Sec'y of Health & Human Servs.*, No. 94-136V, 2009 WL 2524190, at *4 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for review den'd*, 91 Fed. Cl. 86, 92 (2010), *aff'd*, 412 Fed. App'x 307 (Fed. Cir. 2011). But attendant care is available to *supplement* home care. *McCollum*, 91 Fed. Cl. at 92. In particular, additional attendant care has been permitted in cases where the injured party is a child, in order to alleviate in some part the burdens placed on parents and other caregivers. *Id.*; *see also I.D.*, 2013 WL 2448125, at *7-8 (awarding a sliding scale of hours over time, as child aged, but refusing to grant continuous care); *Johnston v. Sec'y of Health & Human Servs.*, No. 88-30V, 1990 WL 299393, at *8 (Fed. Cl. Spec. Mstr. May 21, 1990) (awarding eight hours per week of attendant care for child until he reached the age of 14 ½). In such cases, however, the allowable supplemental care is limited, even where the child must be closely monitored at all times. *See, e.g., Davidson v. Sec'y of Health & Human Servs.*, No. 90-24V, 1991 WL 43030, at *3 (Cl. Ct. Spec. Mstr. Mar. 14, 1991) (allowing eight hours of attendant care per week for 48 weeks a year, but eliminating attendant care after injured child becomes 21).

The scope of disagreement between the parties in this case is extremely narrow. Both sides accept that it is appropriate to "upgrade" Ms. Novarro to a skilled nursing facility, and that in doing so she will receive more hands-on care than she did at Chesterfields. Both agree that home care would provide some benefits that cannot be replicated at Essex Meadows. And both sides presented qualified and credible experts.

Although the evidence presented does not establish a clear medical need for supplemental attendant care, Petitioner has demonstrated that additional attendant care would greatly improve Ms. Novarro's overall day-to-day existence, by better helping her meet many different "basic

needs." I find persuasive Ms. Bond's testimony that she included this element in her life care plan because she recognized Ns. Novarro's circumstances to be unique. It is reasonable to conclude that, because Ms. Novarro must dwell in an assisted living facility, she is losing some benefits of home care – and that the damages award should take that into account. If attendant care is permitted on a supplemental basis in home care circumstances, then in the situations where home care is impossible, it should also be allowed.

Nevertheless – I must keep in mind the "reasonably necessary" standard in deciding the present dispute. Despite its vagueness, that standard does not permit an award in an amount sufficient to "optimize" a party's quality of life. Thus, even though I accept Petitioner's assertions that the care provided by Essex Meadows (which, as Petitioner argued, is not constant even if "24-hour" in nature) will not make it possible for Ms. Novarro to exercise complete autonomy in decisions that impact her day-to-day choices, the Act does not permit an award aimed at effecting such an end. Indeed, as noted above, even under home care conditions injured parties are not entitled to constant, on-demand assistance. *See, e.g.*, *Davidson*, 1991 WL 43030, at *3.

Petitioners have also not made a case for the number of attendant hours requested. Indeed, Ms. Bond acknowledged that fewer hours would still benefit Ms. Novarro. In *Lerwick*, the most recent case in which a petitioner and Respondent disputed the amount of attendant care appropriate, Special Master Moran assiduously evaluated the three medical risks that attendant care was aimed at addressing (seizures, aspiration of food or saliva, and bed sores), but found that the existing care the child-vaccinee was receiving was sufficient to ward against such problems. *Lerwick*, 2014 WL 3720309, at *8-13. Here as well, Petitioner has not persuasively established that the 40 hours per week of attendant care requested would not at times be duplicative of what Essex Meadows will be providing. I also give some weight to the fact that Ms. Novarro was reasonably cared for at Chesterfields without such assistance.

Taking all of the above into account, I find that *some* supplemental attendant care is warranted under the circumstances – enough (borrowing from *I.D.*'s formulation of the "reasonably necessary" standard) to meet some of Ms. Novarro's "basic needs," while not "optimizing" her quality of life on a daily basis. The fact that Ms. Novarro cannot be cared for at home, and appears somewhat estranged from family members that might otherwise provide home assistance, suggests a need for a modicum of additional, one-on-one care that even a top-of-the-line skilled nursing care facility like Essex Meadows cannot consistently provide. A lesser amount of additional attendant care is "reasonably necessary," and therefore should be included in the overall entitlement award.

Based upon my discussions with the parties, I have been informed that the minimum time available for the requested care is four hours per day. **I will therefore award a total of four hours per day of attendant care in addition to that already provided by Essex Meadows**. In addition,

instead of having the attendant appear five days per week (which would likely lead to some wasted time when Ms. Novarro did not require the assistance), **I will award the attendant services twice a week.** This is consistent with the Program's compensation limits, and avoids excessive duplication of services already provided. Petitioner, in consultation with Ms. Novarro and her care provider, shall determine which days of the week are most appropriate for the additional care, and can work out a schedule based on the limits set forth herein, once the damages award is finalized.

## CONCLUSION

Having considered the evidence in the record in its totality, I am persuaded that Ms. Novarro should receive **four hours of attendant care twice a week**, calculated at the sums presently set forth in the JLCP. The parties are therefore ORDERED to incorporate this ruling into a proffer that will be the basis for a decision awarding Petitioner compensation for Ms. Novarro.

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Special Master
